## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BOBBY HARRISON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 09-CV-657-TLW** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER AND OPINION

Plaintiff Bobby Harrison seeks judicial review of the decision of the Commissioner of the

Social Security Administration denying his claim for disability insurance benefits under Title II of

the Social Security Act ("SSA"), 42 U.S.C. §416(i) & 423. In accordance with 28 U.S.C. § 636(c)(1)

& (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 9].

## <u>Introduction</u>

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C.§ 423

(d)(5); 20 C.F.R. § 404.1512(a). "Disabled" is defined under the Act as an "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden,

plaintiff must provide medical evidence of an impairment and the severity of the impairment during

the time of his alleged disability. 20 C.F.R. § 404.1512(b). A disability is a physical or mental

impairment "that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §

423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs,

symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. § 404.1508. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. § 404.1513(a).

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996); and Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). The Court is to consider whether the ALJ followed the "specific rules of law that must be followed in weighing particular types of evidence in disability cases," but the Court will not reweigh the evidence or substitute its judgment for that of the ALJ. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

## Background

Plaintiff was born on January 28, 1961. He was 46 years old on the date of the hearing before the ALJ. [R. 576, 578]. Plaintiff has a high school education. [R. 580]. He is married and lives with his wife and his twelve year old niece. [R. 579]. From 1979 to 1987, plaintiff was employed as a tile setting helper for C&C Tile. From 1987 to 2001, he was employed by Bison Electric Company operating digger trucks, setting poles, and running cranes. [R. 581]. On May 30, 2001, at age 40, plaintiff received a work-related injury to his back while setting an electrical pole. [R. 559]. His

initial worker's compensation evaluation outlined his injury as a herniated disc at L3 and L4. [R. 234]. He has not been employed since May 30, 2001. [R. 559]. Following his injury, plaintiff had a series of spinal surgeries performed by various doctors, including Neurosurgery Specialist Benjamin Benner, M.D., and Orthopedic Specialist Thomas Craven, M.D.

Plaintiff applied for and receives workers' compensation benefits. [R. 599]. He previously applied for and was denied social security disability benefits. [R. 67]. On September 3, 2002, Dr. Benner released plaintiff to return to work at a medium-intensity work level with a 40-pound lifting restriction. His examination showed some generalized soreness in plaintiff's back. [R. 234, 236]. On October 18, 2002, Dr. Benner released plaintiff from his care giving him a 27% overall impairment rating. [R. 234].

Dr. Thomas A. Marberry was plaintiff's treating specialist for his shoulder injury. [R. 264]. On May 15, 2003, Dr. Marberry performed an outpatient rotator cuff repair to plaintiff's left shoulder. [R. 265]. On September 16, 2003, Dr. Marberry released plaintiff to return to light duty work, with a 30 pound weight restriction. He opined that plaintiff "should be okay to perform clerical, sales work, or dispatcher type work." [R. 263].

Plaintiff was treated by Dr. Steven Egleston on March 7 and 17, 2005 for an isolated instance of blood in his stool. At that time, plaintiff reported to Dr. Egleston that his medications included only a "very occasional LORTAB for pain, but he does note this is very minimal." [R. 368].

In 2005, plaintiff returned to Dr. Cravens, for his second set of back surgeries. On August 22, 2005, Dr. Craven's reviewed the functional capacity evaluation ("FCE") report prepared by Carl Daley, an exercise physiologist with the Orthopedic Hospital. From his review, Dr. Craven opined that plaintiff could perform a medium work level, with a 35 pound weight restriction. He decided

plaintiff had reached his maximum medical improvement and released him from his care. [R. 435]. On March 11, 2005, Dr. Craven also released plaintiff to return to work with a permanent weight restriction of 10 pounds. [R. 440, 442]. Dr. Craven recommended that plaintiff participate in "job retraining." [R. 445]. On January 22, 2007, Dr. Craven recommended that plaintiff "continue with his light-duty work restrictions." [R. 515].

In 2007, as part of his worker's compensation case, plaintiff was referred to a rehabilitation center for a vocational evaluation. The evaluation was completed on April 4, 2007. In the report, the evaluator concludes that plaintiff has transferable skills to occupations as a clerical dispatcher, maintenance dispatcher, auto rental clerk, utilities scheduling clerk, motor transportation dispatch clerk, and telephone solicitor. [R. 562]. The evaluator observed, in part, that plaintiff "did not express a great deal of interest about going back to work." [R. 565].

Plaintiff alleges he is unable to work because of pain in his back, right leg, left elbow, left wrist, left shoulder and a tendency to fall because of his right leg. [R. 582-3]. In assessing plaintiff's qualification for disability benefits, the ALJ found that plaintiff has not engaged in substantial gainful employment since May 30, 2001. He found the relevant adjudicative period to be from April 25, 2002 to December 31, 2006. [R. 17]. He defined plaintiff's severe impairments as problems with his back, shoulders, elbows, hips, legs, feet, wrists, and depression. [R. 20]. The ALJ summarized plaintiff's medical tests, treatment, and procedures from 2001 through 2006, as evidence of his physical impairments. The ALJ relied on a November 22, 2005 notation in plaintiff's medical records, where plaintiff reported depression and a short temper, as evidence of his mental impairment. The ALJ summarized Dr. Egleston's medication plan. In August 2006, Dr. Egleston changed plaintiff's medication to Lexapro, and after four weeks plaintiff reported the medication was effective

in treating his depression. [R. 20]. The ALJ summarized plaintiff's testimony regarding his inability to work because of pain. The ALJ found that plaintiff's allegations regarding the intensity, persistence, and limiting effects of his pain were not entirely credible. [R. 22]. The ALJ further found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments, that he is unable to perform his past work as a lineman, pole setter, and tile setter helper, but that plaintiff retains the residual functional capacity ("RFC') to perform sedentary work. The ALJ also placed several restrictions on his ability to perform sedentary work, including: limited bending and squatting; occasional climbing, pushing/pulling with upper left extremity, operating foot control with right lower extremity, reaching overhead, crouching, crawling, kneeling, and twisting torso; with slight limitation in fingering, feeling, and griping; and completely avoiding rough, uneven surfaces, unprotected heights, fast and dangerous machinery, and damp environments. Due to his depression, the ALJ also limited work to simple, repetitive, and routine tasks, including a slight limitation on contact with the public, coworkers, and supervisors. [R. 21]. The ALJ consulted a vocational expert, Michael Wiseman. [R. 609]. Based on Mr. Wiseman's testimony and other relevant factors, the ALJ found that plaintiff could perform sedentary work such as a clerical mailer and semi conductor assembler and that these positions existed in significant numbers in the regional and national economy. [R. 24]. The ALJ concluded that plaintiff was not disabled within the meaning of the SSA. This finding was the fifth in the five step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[1]

---

[1] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age,

**Discussion**

Plaintiff raises one issue on appeal. Whether the ALJ performed a proper credibility analysis of plaintiff's allegation of disabling pain. [Dkt. # 13 at 1 ]. Plaintiff does not dispute that the objective evidence supports a finding that plaintiff can perform sedentary work. Rather, plaintiff contends that his pain precludes him from sustaining full time employment. [Dkt. # 13 at 8].

To support his credibility finding, the ALJ first cited language in the FCE report prepared by Mr. Daley, including Mr. Daley's comments that: (1) plaintiff was engaging in symptoms magnification and exaggeration; (2) he felt plaintiff was self limiting his behavior; (3) plaintiff showed no problems with leg buckling on the treadmill; and (4) his behavior and effort during the examination was inconsistent. [R. 22]. These comments are contained in Mr. Daley's FEC report. [R. 424]. The ALJ then referenced Mr. Daley's deposition testimony attributing a statement to Mr. Daley that "he felt that the claimant was not putting forth his best effort during the testing." [R. 22, 131]. Plaintiff claims this last statement is inaccurate. There is some validity to this argument, but not to the extend plaintiff claims. In his deposition, Mr. Daley testified that he did not form opinions during the examination and whether the test was valid or invalid was based on plaintiff's efforts during the testing. Mr. Daley was asked during his deposition whether plaintiff did or said anything to make him think that plaintiff "was not putting forth his best effort in completing the evaluation." Mr. Daley responded, "No, Sir." Clearly, the ALJ misrepresented Mr. Daley's response. However, from a review of the complete dialogue, Mr. Daley's response was not an opinion regarding plaintiff's efforts; rather, it was his assessment that plaintiff's efforts showed that the test results were valid.

---

education, and work experience. <u>Ringer v. Sullivan</u>, 962 F.2d 17 (10th Cir. 1992) (unpublished) citing <u>Williams v. Bowen</u>, 844 F.2d at 750-52.

[R. 131].  Mr. Daley explained:  "What I have is based strictly upon Mr. Harrison's efforts that day, which says Mr. Harrison's efforts with this FCE suggest valid on the reliability/validity test."  [R. 145].  The ALJ also relied on Mr. Daley's deposition testimony as evidence that there was "some inconsistencies in the testing, particularly with the lifting."  This is an accurate report of Mr. Daley's deposition testimony.  [R. 142].  Mr. Daley again reiterated that the inconsistencies effect the validity of the test results, not his personal opinion.  In explaining, he said, "I do not form opinions.  I just write down only what Mr. Harrison demonstrates."  [R. 146].  Plaintiff's argument on this matter lacks merit.

Next, the ALJ relied on plaintiff's treating specialists to show the chronological progression of their opinions to release plaintiff to go back to work and their professional assessment regarding plaintiff's weight restrictions.  For instance, the August 12, 2002 opinion of Dr. Michael Tanner shows a 30 pounds weight restriction.  [R. 22].  The October 18, 2002 opinion by Dr. Benner releases plaintiff to return to work. [R. 23].  The September 19, 2003, opinion of Dr. Craven states that plaintiff could return to work with a 40 pound weight restriction.  Id.  After the second set of surgeries, Dr. Craven's December 1, 2004 opinion states that plaintiff could perform light duty work with a 10 pound permanent weight restriction.  Dr. Craven recommended that plaintiff participate in "job retraining."  Id.  Dr. Craven's January 24, 2005 opinion releases plaintiff to return to work with a 10 pound weight restriction.  Dr. Craven's March 11, 2005 opinion, based on his objective medical evaluation, states that plaintiff has "no neurological deficit" and releases plaintiff to return to work. Id.  The ALJ also cited the opinion of Dr. Steven Lee, M.D., an agency consultant, who, after conducting an independent physical examination, opined that plaintiff's "neurological testing was all normal, his gait was stable and within normal limits with and without the cane, his handgrip strength

and muscle strength were normal and he did have full range of motion in all of his joints." Id.

Third, the ALJ cites the three hour "in-depth vocational evaluation" performed on April 4, 2007, which concluded that plaintiff's "work profile most closely resembled the sedentary exertional range of work with limitations against overhead work." Id.

Fourth, the ALJ relied on plaintiff's testimony regarding his daily activities. "With regard to household chores, he stated he did laundry, started dinner, took care of the house and dogs, and ran errands. He is also able to drive." Id. Finally, the ALJ relied on evidence that plaintiff was unwilling, rather than unable, to return to work. "The claimant expressed little interest in attending a retraining program. He had very little interest or direction with regard to his vocational future and did not appear to have a desire to return to work." Id.

Plaintiff contends there is a lack of objective medical evidence to support the ALJ's evaluation of plaintiff's subjective complaint of pain. The Court disagrees. Dr. Craven relied on objective medical evidence in releasing plaintiff to return to work on March 11, 2005. "Dr. Craven found no neurological deficit upon examination." Id. The ALJ relied on the 3-hour in depth FCE report issued on April 4, 2007, which concluded that plaintiff's "profile most closely resembled the sedentary exertional range of work." Id. And the ALJ relied on the concurrence between two of plaintiff's treating specialist, Dr. Benner and Dr. Craven, that plaintiff had the functional capacity to work. [R. 22-23]. This opinion was confirmed by Dr. Lee, following an independent evaluation using medically acceptable neurological testing. [R. 23]. Plaintiff contends that the objective testing and the concurrence by plaintiff's numerous treating specialists and the consultant physician in combination are insufficient evidence to assess plaintiff's pain. Plaintiff also claims the ALJ erred in failing to consider plaintiff's medication, attempts to obtain relief, frequency of medical contacts, daily

activities, and the consistency or compatibility of nonmedical testimony with objective evidence. [Dkt. # 13 at 8].

The Court finds that the objective evidence is sufficient in this case to support the ALJ's findings. Further, the Court disagrees that the ALJ failed to consider these additional factors. At the hearing, the ALJ noted that plaintiff's recent medical files showed that plaintiff was not taking any prescription pain medication. Plaintiff responded that when he feels he needs a prescription, he notifies his physician to obtain Ultram. [R. 592]. Based on plaintiff's own testimony, it is uncontested that prescription pain medication was not a major factor for the ALJ to consider. The decision covers plaintiff's use of Lexapro to control his depression. [R. 20]. The ALJ summarized plaintiff's medical contacts and the opinions expressed by plaintiff's treating specialists. The ALJ also relied on plaintiff's testimony regarding his daily activities. The only nonmedical evidence was plaintiff's subjective testimony, which the ALJ summarized. Thus, plaintiff's argument has no merit.

An ALJ's credibility findings warrant particular deference because he is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002). After comparing plaintiff's allegations to the objective evidence, the uncontradicted opinions of plaintiff's treating specialist, and plaintiff's daily activities, the ALJ made a supported finding that plaintiff's subjective complaints lacked credibility. The ALJ's credibility finding is closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Hill v. Astrue, 289 Fed. Appx. 289, 294 (10th Cir. 2008) (unpublished).[2] Plaintiff fails to cite to any medical evidence which contradicts the

_____

[2] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

ALJ's assessment of plaintiff's credibility. Because the ALJ gave supported reasons for his credibility determination, the Court should uphold his finding that plaintiff was not fully believable. Bean v. Charter, 77 F.3d 1210, 1213 (10th Cir. 1995). Further, the Court finds that the ALJ's credibility determination is supported by substantial evidence and the correct legal standards were applied. Plaintiff raises no other issue on appeal.

## **Conclusion**

The Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 15th day of March, 2011.


_____
T. Lane Wilson
United States Magistrate Judge